UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LORETTA JONES,

               Plaintiff,

        -against-

H&M HENNES & MAURITZ, ET AL.,

               Defendants.

23-CV-4778 (LTS)

ORDER

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, who is proceeding *pro se* and *in forma pauperis* ("IFP"), filed this complaint alleging that Defendants violated her rights. By order dated July 27, 2023, the Court dismissed the complaint, but granted Plaintiff leave to replead her claims under Title VII of the Civil Rights Act of 1964 ("Title VII") in an amended complaint. Plaintiff filed an amended complaint on September 27, 2033, and the Court has reviewed it. The action is dismissed for the reasons set forth below.

## BACKGROUND

In the original complaint, Plaintiff named numerous defendants, including her former employer, H&M, and alleged a decades-long conspiracy on behalf of H&M and other defendants to terminate her employment and to engage in ongoing stalking, sexual assaults, and "Remote Weaponry Invasions" against her.

By order dated July 27, 2023, the Court dismissed as frivolous Plaintiff's claims arising from her allegations that H&M or others were assaulting her using "Remote Weaponry Invasions." (ECF 5, at 5-6.) The Court dismissed Plaintiff's claims against the United States, the Supreme Court of the United States, and the Federal Bureau of Investigation ("FBI") on the grounds of sovereign immunity, and because Plaintiff did not plead any facts showing a waiver

of sovereign immunity. (*Id.* at 6-7.) The Court dismissed Plaintiff's claims against the International Criminal Court ("ICC") for failure to state a claim upon which relief may be granted because Plaintiff alleged no facts suggesting the ICC had any involvement in the events giving rise to this action. (*Id.* at 7.) The Court dismissed Plaintiff's constitutional claims under 42 U.S.C. § 1983 against: (1) H&M and Vanessa Light because private parties are generally not liable under Section 1983 (*id.* at 7-8); (2) the State of New York and the New York State Workers Compensation Board under the doctrine of Eleventh Amendment immunity (*id.* at 8); (3) the New York City Police Department ("NYPD") because it is not an entity that can sue or be sued (*id.* at 9); and (4) the City of New York and New York City Health + Hospital Corporation ("H+H") for failure to state a claim because her allegations did not suggest that the City or H+H has a policy, practice, or custom that violated her federal constitutional rights (*id.* at 9-10). The Court also dismissed Plaintiff's employment discrimination claims under Title VII against H&M as time-barred. (*Id.* at 10-12.)

The Court granted Plaintiff leave to replead only her employment discrimination claims against H&M under Title VII in order to give her an opportunity to allege facts suggesting that her claims are timely or that equitable tolling should apply.

Plaintiff's amended complaint is similar in style and substance as the original complaint and includes allegations and claims that go significantly beyond the limited scope to which the Court granted Plaintiff leave to replead. Plaintiff names the following Defendants, which includes not only Defendants whom the Court has previously dismissed from this action, but also new Defendants that have no relation to Plaintiff's Title VII claims: (1) H&M, Hennes & Mauritz LP; (2) H&M; (3) PMA Insurance Group PMA Companies ("PMA"); (4) NYS Workers' Compensation Board; (5) New York State Attorney General Letitia James; (6) NYPD;

(7) New York City Law Department; (8) FBI; (9) "United States Department of Defense for Military Act or Structure"; (10) United States Supreme Court; (11) International Criminal Court; (12) Udolf Properties; (13) Henry Street Settlement; (14) "Jessica _____"; (15) "Carmen _____"; and (16) "_____ _____."

Plaintiff alleges,

> After many years of being led to believe I was being harassed by a surveillance abuse tied to a former NYPD and Mafia convicted felon 20 years my senior, I've now realized it was my former employer H&M and their reluctance to pay my claims at the New York State Workers' Compensation Board related to a toxic injury I sustained at my workplace there at H&M in 2001, based on the color of my skin and my race.

(ECF 8, at 6-7.)[1]

> In 2001, H&M

> went about loading departments on me . . . because of the color of my skin, (so I'd look like [I] wasn't doing [m]y work) my race (so I'd look like I abused drugs/the cans of adhesive) and my gender (so I'd look like I wasn't making enough money) they refused to compensate me for the toxic injury I sustained after using a case they provided of toxic spray plus 1 can that I had to buy to finish the task they assigned me for a season start promo on August 17, 2001 involving 47 posters and frames.

(*Id.* at 7.)

Also in August 2001, Plaintiff was injured when a "platform ceiling ladder got caught on the edge of a counter" and Plaintiff's "ribcage . . . came out . . . leaving [her] left side to slowly collapse." (*Id.*) After Plaintiff was disabled, "G. Creamer wrote me up for not being able to do more of the task that had injured me" and "Worker's Compensation never provided compensation for this nor even fined Creamer." (*Id.* at 8.)

Plaintiff describes a "pattern of abuse" such as the

---

[1] The Court quotes from the amended complaint verbatim. All spelling, grammar, and punctuation are as in the original unless otherwise indicated.

Remote Weaponry Invasions and sending my 401k [] check from Raymour & Flanigan (where the harassment was continued in what I now see as a pattern) to a former shelter room in less than a year after employ and then alerting Social Security that they sent the $400 check to me as if paid, instead of informing S.S. the true status that it remained uncashed, presumably, and other actions that amount to a recognizable patter of 'undercover' bad actors that have now for the most part stopped.

(*Id.*)

H&M discriminated against Plaintiff based on her gender "by failing to employ 'head of household' reasoning that I certainly required. They continually failed to provide compensation where they could have, upending my ability to remain in the home I provided for my son and me." (*Id.* at 9.)

Plaintiff further alleges,

Toxic spray use was something H&M knew would be looked at as if I were abusing drugs because of the color of my skin and my race and assigned me the task for that reason. They had a crusade against blacks in the Palisades Center Mall store in West Nyack, NY that manager Creamer and other leveled while I was in training. Citing 'everyone's doing drugs at that store' as if all black people did drugs. He didn't even know them or know their work, he only knew of their color.

(*Id.*)

Furthermore,

H&M banning up with loss prevention hidden surveillance camera in the store and stock room area with stereotypes of the color of my skin and my race caused the surveillance abuse for almost 15 years I was forced to hear the contentious biased views. Led to believe the harassment was from a former NYPD/Mafia individual I had Order of Protection against, the fact the harassment was by my former employer, escaped me. This was the extenuating circumstance that caused my failure to report to the EEOC. My former employer yelling out 'That's not rape Loretta' by Debbie a former acquaintance and Frank an H&M employee, at the beginning of the sound RWIs, as I walked to the shelter I was in with my son on the 111th block of Manhattan between Broadway and Riverside Drive on day when I reported their stalking at a bank also and thought Harlem district attorney I was I touch for wrongs against me by my WC claim would be able to get the surveillance cameras' footage of the offenses. A Tamesha Jones in the shelter next threatened me saying once 'that case closes I was going to get what I (she)

deserve(s).' She later announced to be military to a group of associates not knowing I was waiting for an elevator nearby.

(*Id.* at 10-11.)

Plaintiff alleges that she did not recognize that the abuse she experienced was coming from H&M, "a company with military ties," until she only recently recognized it as a "*pattern* of abuse." (*Id.* at 11) (italics in original).

Plaintiff indicates that some of the newly added Defendants were part of the conspiracy with H&M:

The parties harassing me with H&M for these 23 years include landlords permitting assailants to move into premises surrounding mine as early as 2003 and coordinated with failure to pay my WC claim, harass me with chemical fumes and hidden remote weaponries. Landlord Udolf Properties for an apartment I leased in Avon, CT to reside with my then young son, Robert Udolf having/allowed Greg, Vito and a third apartment of men to harass me and damage my car; and Henry Street Settlement here in NYC having/allowed a Jessica of 4J, a Carmen of 5i and a _____ of 4F to 'spy on' me as the said in my apartment for the purpose of knowing my whereabouts within the apartment assault me with hidden weaponries. Henry Street also, based on my skin color and race, had me hospitalized several times rather than normal landlord-tenant things that transpire such as letters or phone calls, all against my right to protections under the Equal Protection Amendment.

(*Id.*)

Plaintiff further alleges that "[m]ilitary/civilians working hand-in-hand w/ undercover police after 9/11 Patriot Act initiatives illegally launched RWIs or DEWs Directed Energy Weapons against me." (*Id.* at 12.) In 2009, "DEWs were used against me in the harassment by H&M and the parties joining them as if they were at a party." (*Id.*) DEWs were also used against her in shelters for the past nine years and "[o]ther, more harmful and painful RWIs were used starting in 2022 through today." (*Id.*) She alleges that she's "assaulted" by "hidden weaponry" at least once a day. (*Id.*)

Plaintiff further alleges that in October 2022, she sent complaints to the United States Supreme Court and the International Criminal Court, but she "got no response," and their "failure to send even a letter of receipt caused additional pain and hardship." (*Id.* at 13.)

Plaintiff seeks $250 in damages and an order directing that "RWIs be banned." (*Id.* at 14.)

## DISCUSSION

### A.     Claims previously dismissed

In the amended complaint, Plaintiff reasserts many claims that the Court has previously dismissed. The Court again dismisses Plaintiff's claims arising from her allegations that H&M and others are assaulting her through "Remote Weaponry Invasions" and "Directed Energy Weapons" as frivolous for the reasons stated in its July 27, 2023 order of dismissal. (ECF 5, at 5-6.)

The Court further dismisses Plaintiff's claims against the Supreme Court of the United States, the FBI, the ICC, the New York State Workers Compensation Board, the NYPD, and the City of New York for the reasons stated in the July 27, 2023 order.

### B.     Claims outside the scope of the order to amend

In its July 27, 2023 order, the Court granted Plaintiff leave to replead only with respect to her Title VII claims against her former employer H&M. Notwithstanding the limited scope of the leave granted to her, in her amended complaint, Plaintiff names numerous additional defendants and appears to be attempting to assert claims that go well beyond her Title VII claims against H&M. These new claims against new defendants PMA, New York State Attorney General Letitia James, the New York City Law Department, the "U.S. Dept. of Defense for Military Act or Structure," Udolf Properties, Henry Street Settlement, and the partially identified individuals are dismissed without prejudice because they are beyond the scope of the permitted amendment.

*See, e.g.*, *McCray v. Patrolman N.A. Caparco*, 761 F. App'x 27, 30 (2d Cir. 2019) (summary order) ("District courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted." (citing *Palm Beach Strategic Income, LP v. Salzman,* 457 F. App'x 40, 43 (2d Cir. 2012)); *Grimes v. Fremont General Corp.*, 933 F. Supp. 2d 584, 597 (S.D.N.Y. 2013) (citing cases).

C.     **Claims under Title VII**

In her original complaint, Plaintiff alleged that H&M discriminated against her when she was employed there in 2000 and 2001. In its July 27, 2023 order, the Court explained that, as a precondition to filing suit under Title VII, a plaintiff must first file a timely discrimination charge. *See* 42 U.S.C. § 2000e-5(e)(1); *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 146 (2d Cir. 2012). In New York, a discrimination charge must be filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged act of discrimination. 42 U.S.C. § 2000e-5(e)(1); *see Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78-79 (2d Cir. 2015). This requirement functions as a statute of limitations. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 392 (1982). A claim under Title VII is time-barred when a plaintiff fails to file a timely charge with the EEOC. *See Butts v. N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993), *superseded by statute on other grounds*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1072. This 300-day period is not jurisdictional, however, and it is subject to equitable tolling. *See Zipes*, 455 U.S. at 393. Because Plaintiff's allegations showed that her claims accrued, at the latest, sometime in 2001, she had 300 days, or until sometime in 2002, to file a discrimination charge. Because Plaintiff did not allege any facts suggesting that she filed a discrimination charge at any time and she did not file the complaint in this action until

June 6, 2023, more than 21 years after the alleged discrimination occurred, the Court granted her leave to allege facts showing that her claims are timely or that equitable tolling should apply.

In her amended complaint, Plaintiff again does not allege that she filed a timely charge of discrimination with the EEOC. She instead appears to argue that equitable tolling should apply because H&M is responsible for coordinating a 23-year campaign of harassment against her which included ongoing surveillance and attacks using "chemical fumes" and "hidden remote weaponries" while she lived in shelters in New York and an apartment in Avon, Connecticut. (*See, e.g.*, ECF 8, at 11.) Plaintiff appears to argue that she was initially led to believe this harassment was perpetrated by "a former NYPD and Mafia convicted felon," but only recently did she realize that the harassment was being coordinated by H&M. (*Id.* at 6.)

To the extent Plaintiff's argument for equitable tolling is based on her allegations regarding attacks by "Remote Weaponry Invasions" and "Directed Energy Weaponry," the Court rejects the factual predicate for those arguments as frivolous for the reasons stated above and in its July 27, 2023 order.

Even if the Court were to accept as true Plaintiff's remaining allegations of harassment, the Court determines that equitable tolling should not apply to Plaintiff's Title VII claims. Equitable tolling is "only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." *ZerilliEdelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (internal quotation marks, alterations, and citations omitted). To obtain the benefit of equitable tolling, a plaintiff must show: (1) that she acted with reasonable diligence during the time period tolled, and (2) that extraordinary circumstances justify the application of the doctrine. *Id.* Equitable tolling may be considered

appropriate "where plaintiff was unaware of his or her cause of action due to misleading conduct

of the defendant." *Id.* (citing *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir. 1985)).

Here, Plaintiff waited more than 20 years to file her employment discrimination claim.

Even if the Court accepts Plaintiff's allegations that she initially believed the harassment she

experienced was caused by an "NYPD/Mafia individual" rather than H&M, and that H&M did in

fact engage in a 20-year campaign of harassment against Plaintiff, nothing in the complaint

suggests that Plaintiff was unaware of the alleged racial discrimination when it occurred in 2000

and 2001. Moreover, she alleges no facts suggesting that she was actually prevented from filing a

timely claim or that she acted with reasonable diligence to file a claim during that 20-year time

period.

Dismissal based on an affirmative defense, such as statute of limitations grounds, is

appropriate where the existence of the affirmative defense is plain from the face of the pleading.

*See Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) ("[D]istrict

courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where

the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself

submitted." (internal quotation marks and citation omitted)); *Pino v. Ryan*, 49 F.3d 51, 53 (2d

Cir. 1995) (affirming *sua sponte* dismissal of complaint as frivolous on statute of limitations

grounds); *see also Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007) (concluding that district

court should grant notice and opportunity to be heard before dismissing complaint *sua sponte* on

statute of limitations grounds).

Because it is clear from the face of the pleadings that Plaintiff's claims are time-barred,

and because, after being granted leave to file an amended complaint, Plaintiff has not alleged

facts demonstrating that equitable tolling should apply, the Court dismisses her Title VII claims

for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**D.      Supplemental jurisdiction**

A district court may decline to exercise supplemental jurisdiction of state law claims

when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and

only state-law claims remain, the federal court should decline the exercise of jurisdiction."

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Having dismissed the federal

claims of which the Court has original jurisdiction, the Court declines to exercise its

supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New

York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms

the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which

district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522

U.S. 156, 173 (1997))).

**E.      Further leave to amend is denied**

District courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its

defects, but leave to amend may be denied if the plaintiff has already been given an opportunity

to amend but has failed to cure the complaint's deficiencies. *See Ruotolo v. City of New York*,

514 F.3d 184, 191 (2d Cir. 2008); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because

the defects in Plaintiff's amended complaint cannot be cured with a further amendment, the

Court declines to grant Plaintiff another opportunity to amend.

## CONCLUSION

The Court dismisses this action for the reasons stated in this order and its July 27, 2023

order of dismissal. (ECF 5.)

The Court declines to exercise supplemental jurisdiction of any state law claims Plaintiff

may be asserting. *See* 28 U.S.C. § 1367(c)(3).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would

not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See*

*Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to enter judgment in this action.

SO ORDERED.

Dated:     November 20, 2023
           New York, New York

                                                    /s/ Laura Taylor Swain
                                           _____
                                                 LAURA TAYLOR SWAIN
                                           Chief United States District Judge